Move to the fourth case this morning. McGreal v. McCurth Yes, we'll move it down for you. She'll take care of it. Yeah, just so I can get this paper out. Very good, very good. Thank you. Good morning, your honors. I represent Joseph McGreal, a police officer for the village of Orland Park, who is highly decorated. And in the annual performance reviews signed by the chief of police and the commander, Keneally, and by his supervising officers called him a gifted officer who needed very little supervision, was very active on the midnight shift, and would ferret out crime without being expected to take the kinds of activities he did. Everything changes, your honor, as of October, excuse me, November 2nd, 2009. Two days before, he is invited to a meeting with the mayor and the village manager, along with the president of his union, he was the secretary, to talk about the villages trying to meet their economic shortfall for the following year, and they were thinking about laying off or terminating some of the police officers. McGreal goes to that meeting, and he is not satisfied that the village manager and the mayor are passing his information on to the trustees in the community. So he gives a letter or a proposal to all of the groups saying what you can do to avoid cutting back on officers on the street who are giving you the security which you have wanted, and you have indicated in the newspaper you were worried about losing. What you could do instead is take away all the unmarked squad cars that command staff are allowed to take home, they're allowed to use for their own personal use, and which they also get freely gassed up in the village and maintained by the village. That was a very problematic proposal to command staff. The following day problems start. He made two other observations. He said if you will also give officers the opportunity for early retirement, some of them might be interested in that. And the third opportunity he said was these former command officers who have full-time jobs doing jobs here in the village police department, we officers can do that. The first two proposals I just suggested were taken almost immediately. Within two days, Ms. Brzezbilski offered an early retirement to all the officers in the department. That was one proposal. The second proposal about the taking away the squad cars from command staff was also implemented. The third proposal, Your Honor, about relieving the officers who already had a pension and were now taking a second step, that was not followed. But what was followed was they decided when McGrail started using Freedom of Information Act requests to get the salaries of the command staff, they found that the command staff was making too much money according to their contract. So they cut the command staff's salary by giving them five-day furloughs. So Mr. McGrail, as the Secretary of the Union, incurred nothing but ire from his command staff. The following day, October 3rd, Sergeant Mulberg starts to investigate a traffic stop, which I have given you the video of. And I suggest to you if you have a moment to watch it, you will see an officer who handles himself very well with a citizen in the community at the 3 o'clock hour on the streets of the community. The man who he stops, both Officer Bush, the brother officer, and McGrail say, we detect an odor of alcohol on your breath. The man says, I've had one beer, but I haven't taken my medication. I am a bipolar person. Mr. Durose, could I go to what I think is one of the critical issues here? Sure. The district court found that there was no evidence that any of the decision makers had knowledge of the protected conduct at that, or the protected speech at the November 2nd meeting. I looked in your brief for citations to evidence on that point, and it looked like the strongest point you had was Mr. Malmborg's deposition, where he says, I don't remember. Is there anything else? There is. Judge Mulberg testified at the arbitration hearing, and I can give you the site. I have it here, but it would take me time to find it. Mulberg testifies at the hearing that within the week, the chief has his monthly meeting with all the officers. He talks, the chief mentions the situations about McGrail going to the board. Also, the chief says in his deposition, your honor, I know that all the command staff were not happy about the fact that McGrail was making the FOI requests for their salaries and for their emails, because he thought that they were unfairly going against union members who he was trying to represent. Was Malmborg's arbitration hearing testimony and McCarthy's deposition cited specifically to the district court in the summary judgment briefing? Your honor, I frankly, I'm not sure. Very little seemed to have been actually cited. It may well be. Then I filed a motion with her, your honor, to reconsider, and I think I brought some of that up in the motion to reconsider. Does that answer? Anyway, your honors, they then bring up, for the next six weeks, they bring up all these events after he has that hearing. It's so suspicious. A jury should be allowed, especially in light of the Ortez ruling, which has all of us lawyers reconsidering how we're handling these types of cases. This is all evidence. The jury should see that this all. Speaking of everything that's evidence, is it correct that Mr. McGrail's own affidavit submitted to the district court was never signed? Judge, it was not signed. I don't know how I missed that. But it was not signed. So Mr. McGrail could walk away from anything that's said in that? Judge, he won't. He could, correct? I guess he could. And the spreadsheet that you were relying on? That was prepared by Mr. McGrail. And is that supposed to be able to support his burden of showing a comparator? Judge, it is, and for several reasons. Also, even the officers on this switching seats, all of those officers were interrogated by command, and they all denied changing seats for purposes of ostracizing the officer of the year. They all denied that. Then later on, a year later, the president of the union, after they get rid of McGrail because he's causing the union to have problems with the administration, they all come and say, oh, we did. They don't. They get one-day suspension, Judge. I've got a gifted officer. Are we supposed to look at this spreadsheet and treat that as sufficient evidence of comparison so that we infer pretext and retaliatory motive? Your Honor, I would hope you do, but we can prove all that with those witnesses, which don't get testified to in a 15-page motion for summary judgment response. I have 15 pages to argue to them. I apologize that that affidavit did not get signed. I was flabbergasted when I saw it. How I missed that, me and my client, I had other people deliver the material in. I had hoped that we had signed it. It was a complete oversight. That doesn't stop the need for at least the right to go forward and say, I, as a good police officer, working hard for my union membership and following the request or the invitation of the mayor, tell them how they can save money, and now my career is ruined. That's all I'm asking. Judge, I see the lights on. I want to say whatever I possibly can to answer. Thank you, counsel. Mr. Alexander? Yes, there's a button there that will raise it. Oops. We're not sure how high it goes. We can see you. As long as I'm not completely hiding, then I will proceed. Good morning, your honors, and may it please the court. My name is Alan Wall, and I have the honor and privilege of representing the appellees in this case before you this morning. Your honor, what is at issue here is whether the district court's ruling granting the appellees summary judgment on the appellant's First Amendment retaliation and intentional infliction of emotional distress claim should be affirmed. Now, over the last several years, the appellant has actually contested his termination by the Village of Orland Park by raising numerous claims in several fora. But the only claims left now are those that are before your honors this morning. To survive summary judgment on this First Amendment retaliation claim, the appellant has the obligation to bring forth admissible evidence that supports each of his claims. And the district court here granted summary judgment to the appellees because the district court found that the appellant did not bring forth and did not meet his obligation to provide admissible evidence showing that the appellees knew about McGreal's protected speech prior to initiating disciplinary proceedings. And it is because there is a lack of evidence with regard to knowledge that the plaintiff is not able to meet the requirement of bringing forth evidence on the third element of a First Amendment retaliation claim, the causation or motivation element. Now, we've heard a little bit about the evidence that the appellant mustered or tried to muster in the summary judgment proceedings and in the briefing before your honors in this matter. Let's look at some of that so-called evidence. In the appellant's reply brief, he indicates that Chief McCarthy called every village board member except for one to discuss the November 2, 2009 presentation that the appellant apparently made. And McGreal contends that this is evidence that the defendant must have known about the protected speech. But there's a problem here, your honor. If you go into McCarthy's deposition transcript, what you find is that McCarthy testified, yes, he did call the various members of the Board of Trustees, but he did that after hearing McGreal's deposition testimony in this matter. In other words, he heard McGreal's deposition testimony in 2014 and then called members of the Board of Trustees in 2014 to find out, well, what happened in that November 2, 2009 meeting? Another example of the so-called evidence that is presented by the appellant here, if we drill down on it a bit, he indicates that there is this command staff meeting that was a regular part of the operations of the Orland Park Police Department. And there was a November 2009 command staff meeting. Therefore, the meeting must have concerned McGreal's November 2, 2009 speech to the Board of Trustees. But that is nothing more than conjecture. There is nothing that McGreal provides that provides evidence as to what the appellees may have been thinking or what they may have been saying at that command staff meeting. The only thing it really shows is that Mr. McGreal clearly thought they had to have been talking about him. Or finally, just as another example, McGreal indicates in his first brief to this court that there are many documents that prove that the appellees must have had knowledge of the November 2, 2009 event. One of those documents was a memo from the village manager to Orland Park employees alerting them to the budget shortfall and the possibility of a loss of jobs. But note, that memo presented to support the claim that the appellees had to know about McGreal's speech. That memo was dated two weeks before the November 2 board meeting. So it's logically impossible that that document could have related in any way to the subsequent... Mr. Wall? Yes. How big is the police department in Orland Park? Your Honor, I believe the police department may be around 70 to 80 total. Okay. I understand your point and the district court's point that there's not much, if anything, by way of direct or even circumstantial evidence that the decision makers knew about the protected speech that the plaintiff is claiming here. Just as a matter of real life, though, it does seem likely that a police chief would hear about that kind of thing very, very quickly. Your Honor, there is nothing presented in the record in terms of admissible evidence that McGreal points to and says, these are occasions where I know or I can put forth admissible evidence to show precisely that point. Given the state of the record that McGreal has provided, it's all conjecture and speculation. Were some of those suggestions adopted, or do you know, or does it matter? Your Honor, it is my understanding that the take-home car proposal was adopted. I think it is the case there were furlough days that were taken, but I do want to point something out in that regard if I could. The suggestion here seems to be that these were McGreal's proposals and the village acted on what he proposed, but if you look at the record and even look at some of Mr. McGreal's responses to the Appellee's Statement of Uncontested Facts, it's 56.1 statement, McGreal states at one point that these proposals were jointly created. They arose out of meetings between the village and the various unions that represent employees in the village. If you're looking at this matter, there were a bunch of people, a number of union members who were involved in these proposals, but there's no indication whatsoever in the record that any of these union members ever were the subject of any kind of retaliatory actions. Well, I'm not sure they're very controversial actually, but maybe they're being controversial or whatever that would cause some animosity. I don't know anything about this other than the fact that this guy had a lot of other problems. I'm sorry, but he had lots of... Other problems, the arrest, the speeding, the what do you call it, furlough chase and all that. Yes, indeed. I know we're focusing on the First Amendment, I guess, whatever his speech, but those seem to be kind of minimal compared to whatever else was going on. I think, Your Honor, one of the points I would make in that regard, if you look at the appellant's submissions, there is a significant amount of attention paid to suspicious timing, and Mr. DeRose alluded to that in his remarks. I would just call the court's attention to the Kidwell case, which to me is actually very much almost on all fours with the situation we have here, where the plaintiff in that First Amendment retaliation case publicly criticized his police department in union meetings and then alleged that sometime later he was the subject of retaliatory discipline. What the court drilled down on in Kidwell is there were a number of intervening events that occurred. When you have intervening events and you don't have clear evidence that the employer who took adverse employment action knew about the protected speech, then you don't have a suspicious timing argument to try to bolster the motive or causation element of the First Amendment retaliation claim. It seems to me that if we look at the record that has been put before Your Honors by the appellant in this case, again and again and again, you look to what appears to be evidence and it ends up being what amounts to conjecture, speculation, even citing to the allegations of the complaint as support for either that there was knowledge or that there was pretext. I would just submit if you look at the evidence put forth with regard to pretext and it appears that the main argument is a similarly situated or comparable kind of analysis, Judge Lefkoe focused in on that in her district court ruling granting summary judgment and determined that an unsigned affidavit and a spreadsheet that supposedly shows these comparables, that was not admissible evidence. In fact, there has been no attempt in the briefing that you've received from the appellant to contest Judge Lefkoe's analysis. I guess I would conclude my remarks, Your Honor, by just pointing out that there is a pattern here. Judge Lefkoe noted in her memorandum order and opinion that she could have granted summary judgment to the appellees due to the fact that the appellant did not follow Local Rule 56.1 rules in the summary judgment submissions. The appellant, in his reply to this court, begins by apologizing for not providing an appropriate jurisdictional statement. This kind of pattern of presentations that may be a little bit short occurs again and again and I don't believe that this kind of evidence and this kind of presentation should be the basis for reversing the district court's ruling granting summary judgment on both the First Amendment retaliation claim as well as the IID claim, which, by the way, if you note the argument that's presented to Your Honors regarding the IID, Mr. McGreal actually admits that the level of distress that he's suffering is of a garden variety. That is hardly sufficient to make out an intentional infliction of emotional distress claim. And so, Your Honors, I would submit that this matter should be affirmed and that summary judgment is affirmed for the appellees with regard to both the First Amendment retaliation and the intentional infliction of emotional distress claims. Thank you. Thank you, Counsel. How much time? You have about four minutes, Counsel. Your Honor, let me just, I'll leave it right there, if it's okay. No, that's all right, Counsel, thank you. Judge, first of all, with respect to the motivation element, they tell us I had a problem with the third element. That's the ones that the courts always say, that's the last reason why you should consider summary judgment. Motivation, what did the Chief, what was really going on in the Chief's mind and Commander Keneally, who seems to be the architect of so much of this, after they signed documents for years saying he's a gifted officer and one of the best officers in the community. But Your Honor asked about, did he have other problems? Your Honor, please, he had no problems with this department. The ELSIP traffic stop, I mean the ELSIP pursuit and the forest preserve pursuit, screams at how they are singling him out for heightened scrutiny just because of what had happened. These are all within days of November 2nd. The ELSIP stop, five different communities are chasing this car through his town on the midnight shift at 3 o'clock in the morning. Because the two guys in the car had just been involved in a shooting. They believe one of the men in the car is a shot, and he is. They throw their gun out somewhere in the forest preserve as they go through this community. Joe McGrail pursues that high-speed chase parallel to make sure that the car is still in the view of these other officers. And he stops at the end of his community. What more could we ask of a midnight officer? And then on the other one that they make a big deal about, the forest preserve search, there's a helicopter overhead. All the officers on both of these pursuits on the midnight shift. They all go and try to help finding in the forest preserve one. There was three or four men running around the forest preserves. They're all trying to get him. So they say, you're to go back to your post, all right? He takes too long to go back to his post. He shouldn't have left it without permission. These officers are doing emergency assignments, Your Honor. And no other officer got disciplined at all for the ELSA pursuit. No other officer got disciplined at all for the forest preserve pursuit. The other officer on the traffic stop that I gave you the video for, he says, I smelled the alcohol too. I told him, look, he probably is bipolar. He might not be drunk. And McGrail gives him a break. And Chief McCarthy says, you didn't have probable cause to arrest. Your Honor, you've got to allow them to have some judgment out there on the street. This case is screaming at us that because McGrail got on a bad page with all of them, because take away their plushy, unmarked squad cars, that they don't have to gas up at their own expense or maintain at their own expense. They're all quite unhappy about it. All we want is a chance to show that to a jury. I don't think this case was proper for Her Honor to resolve on matters of motivation. That's what the Seventh Circuit has long told us in the United States Supreme Court. I thank you. I have nothing more to say. If you have any questions, I'll be glad to answer them. I don't believe so, Counsel. Thank you very much. Thank you, Your Honor. Thanks to both counsel. The case is taken under advisement.